UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
AYESHA THOMAS,

                Plaintiff,

        - against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-5086 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Ayesha Thomas brings this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration's ("SSA") denial of her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have cross-moved for judgment on the pleadings. (Dkts. 13, 16, 17.) For the reasons set forth below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion.

## BACKGROUND

### I.    Factual and Procedural Background

Plaintiff has a consistent and extensive history of mental health treatment, beginning in October 2013, up until the date of her hearing before the administrative law judge ("ALJ"). (Tr. 526.[1]) Plaintiff was sexually abused as a child and, in 2012 and 2013, was hospitalized for miscarriages. (Tr. 481.) As a result, Plaintiff experienced flashbacks, nightmares, and visual hallucinations. (Tr. 481–82.) Plaintiff began treatment with Dr. Kenneth L. Caccavale, a psychologist, in October 2013. (Tr. 481, 516–26.) In 2015–2016, Plaintiff's mother, son, and

---

[1] All references to "Tr." refer to the consecutively paginated Administrative Transcript.

older sister died, at which point Plaintiff began bi-weekly therapy sessions and monthly psychotherapy with Dr. Kenneth Caccavale. (Tr. 195, 481, 526.)  The record also shows Plaintiff was treated by Dr. Patricia Doyle, a psychologist, for at least two years. (Tr. 209.)  Plaintiff was diagnosed with depression, anxiety, and post-traumatic stress disorder ("PTSD") and currently takes Citalopram, Mirtazapine, and Hydroxyzine for depression and anxiety. (Tr. 481.)

In addition to Plaintiff's mental health treatment, Plaintiff has a history of physical pain. In 2006, Plaintiff suffered a stroke, resulting in right-sided weakness. (Tr. 485.)  Plaintiff has been seen Dr. Boris Tsukerman, a physician at NYU Langone, for several years due to Bell's palsy and knee and lower back pain. (Tr. 481, 527–84.)

Prior to filing for disability, Plaintiff worked as a full-time hospital and home attendant, and had previously been a food-service worker. (Tr. 19, 198.)  On November 1, 2017, Plaintiff applied for DIB and SSI, claiming that she had been disabled since August 10, 2017, due to lower back pain, right knee pain, Bell's palsy, depression, anxiety, and PTSD. (Tr. 10, 15.)

In connection with her DIB and SSI application, Plaintiff met with two consultative examiners in March 2018—one who assessed her mental impairments and one who assessed her physical impairments. On March 4, 2018, Plaintiff met with consultative examiner Dr. Lucy Kim, a psychologist, who concluded that Plaintiff's mental impairments resulted in "mild" limitations regulating emotions, controlling behavior, and maintaining well-being, but noted no other limitations. (Tr. 481–84.)  Plaintiff also met with consultative examiner Dr. Ram Ravi, an occupational medicine expert, who determined that Plaintiff was "moderately" limited in standing, walking, pushing, pulling, lifting, carrying, and bending due to back pain, right knee pain, and right-sided weakness due to the stroke. (Tr. 485–88.)  Dr. Ravi also noted that Plaintiff's headaches would likely lead to workday interruptions. (Tr. 488.)

In addition to the consultative examiners, two non-examining experts provided medical opinions on Plaintiff's impairments. Dr. Fassler concluded that Plaintiff's mental impairments were "non-severe." (Tr. 63–64.) However, it appears that this opinion relied exclusively on the opinion of Dr. Kim, the one-time consultative examiner, because the ALJ noted that Dr. Fassler did not have access to Exhibits 6F–10F, the only treatment notes and medical opinions regarding Plaintiff's mental health impairments other than Dr. Kim's opinion. (Tr. 17.) Furthermore, Dr. Fassler's opinion notes that treatment records had been requested but not received. (Tr. 64.) In addition to Dr. Fassler, Dr. Feldman, reviewing the consultative examiner opinions and treatment records from before the alleged onset date of August 10, 2017 (Tr. 234–488 (NYU Langone records from February 2016–May 2017)), determined that Plaintiff's physical impairments support a finding of "not disabled." (Tr. 65–70.)

Plaintiff's claims for DIB and SSI were initially denied on March 28, 2018. (Tr. 10.) Plaintiff then requested a hearing before an ALJ. (Tr. 11.) On September 18, 2019, Plaintiff appeared with her attorney Christopher D. Latham for a video hearing before ALJ Mary Ann Poulose. (Tr. 25–50.) During the hearing, vocational expert Diamond Warren testified. (Tr. 25.) By decision dated November 29, 2019, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act") from August 10, 2017, her alleged onset date, through the date of the ALJ's decision. (Tr. 10–24.) Plaintiff's request for a review of the ALJ's decision was denied by the Appeals Council on August 24, 2020. (Tr. 1–6.) Thereafter, Plaintiff timely commenced this action.[2]

---

[2] According to 42 U.S.C. § 405(g),

[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [her] was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to [her] of

## II.    The ALJ's Decision

In evaluating disability claims, an ALJ must adhere to a five-step inquiry.  The plaintiff bears the burden of proof at the first four steps of the inquiry; the Commissioner bears the burden at the final step.  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  First, the ALJ determines whether the plaintiff is currently engaged in "substantial gainful activity."    20 C.F.R. § 416.920(a)(4)(i). If the answer is yes, the plaintiff is not disabled.  *Id.*  If the answer is no, the ALJ proceeds to the second step to determine whether the plaintiff suffers from a severe impairment.  *Id.* § 416.920(a)(4)(ii).  An impairment is severe when it "significantly limit[s] [the plaintiff's] physical or mental ability to do basic work activities."  *Id.* § 416.922(a).  If the impairment is not severe, then the plaintiff is not disabled.[3]  *Id.* § 416.920(a)(4)(ii).  But if the plaintiff does suffer from an impairment or combination of impairments that is severe, then the ALJ proceeds to the third step and considers whether it meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  *Id.*

---

notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g).   "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the [plaintiff] makes a reasonable showing to the contrary."  *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)).  The final decision was issued August 24, 2020 (Tr. 1), and the Complaint was filed on October 22, 2020 (Complaint, Dkt. 1), 55 days after the presumed receipt date of the decision, rendering this appeal timely.

[3] In cases involving mental health, such as this one, a mental health impairment is severe when the Plaintiff has either one extreme or two marked limitations in a broad area of functioning, which include understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves.  20 C.F.R. Part 404, Subpart P, App'x 1, § 12.04(B).  An "extreme limitation" is defined as the inability to function independently, appropriately, or effectively, and on a sustained basis.  *Id.*  A "marked limitation" means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.  *Id.*

§ 404.1520(a)(4)(iii); *see also id.* Pt. 404, Subpt. P, App'x 1.  If the ALJ determines at step three that the plaintiff has one of the listed impairments, then the ALJ will find that the plaintiff is disabled under the Act.  *Id.* § 404.1520(a)(4)(iii).  On the other hand, if the plaintiff does not have a listed impairment, the ALJ must determine the plaintiff's residual functional capacity ("RFC") before continuing to steps four and five.  To determine the plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms, [that] may cause physical and mental limitations that affect what [the plaintiff] can do in a work setting."  *Id.* § 404.1545(a)(1).  The ALJ will then use the RFC finding in step four to determine if the plaintiff can perform past relevant work.  *Id.* § 404.1520(a)(4)(iv).  If the answer is yes, the plaintiff is not disabled.  *Id.* Otherwise, the ALJ will proceed to step five and determine whether the plaintiff, given their RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy.  *Id.* § 404.1520(a)(4)(v).  If the answer is yes, the claimant is not disabled; otherwise, the claimant is disabled and is entitled to benefits.  *Id.*

Here, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 10, 2017.  (Tr. 13.)  At step two, the ALJ determined that Plaintiff had the "following severe impairment: status-post stroke."  (*Id.*)  The ALJ found that Plaintiff's alleged mental impairments—depression, anxiety, and PTSD (Tr. 15)—were not sufficiently severe as to satisfy the step two criteria.[4]  (Tr. 13.)  At step three, the ALJ found that Plaintiff's impairments

---

[4] Plaintiff points out that the ALJ appears to have mischaracterized Plaintiff's impairments at Step 2.  (Plaintiff's Brief ("Pl.'s Br."), Dkt. 13-1, at 10–13.)  This mischaracterization appears to be based on the ALJ's erroneous or incomplete understanding of the record.  For example, the ALJ notes that there was no significant evidence that Plaintiff sought psychiatric treatment, but fails to consider the near six years of psychotherapy treatment Plaintiff underwent with Dr. Caccavale.  (Tr. 14, 526.)  Additionally, the supporting evidence relied on by the ALJ was the opinion of Dr. Kim.  (Tr. 13–14.)  Dr. Kim, however, was a one-time consultative examiner who did not have access to Plaintiff's mental health records.  (Tr. 17–18, 481–84.)  ALJs should not rely too heavily on consultative examiners, particularly in the context of mental illnesses where "a

did not meet or medically equal any of the listed impairments in the Listings.  (Tr. 14.)  The ALJ

then determined Plaintiff's RFC as follows: "[T]he claimant has the residual functional capacity

to perform light work[5] as defined in 20 CFR 404.1567(b) and 416.967(b) except: occasional

climbing, crouching, crawling, stooping, and kneeling, with frequent handing and fingering."  (Tr.

14.)  At step four, the ALJ concluded that Plaintiff could perform her past work as a food-service

worker or hospital and home attendant.  (Tr. 19.)  Having determined that Plaintiff was capable of

performing her past work, the ALJ did not move on to step five and concluded that Plaintiff was

not disabled.  (*Id.*)

---

one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health."
*Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019).  This is especially true if the consultative
examiner does not have access to important treatment records.  *Benitez v. Comm'r of Soc. Sec.*,
No. 20-CV-5026 (RWL), 2021 WL 4239244, at *15 (S.D.N.Y. Sept. 17, 2021).

The Court, however, finds this error harmless because the ALJ continued the sequential
evaluation process and considered the symptoms actually alleged by Plaintiff during the
subsequent steps.  (Tr. 14–19); *see Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013)
(summary order) (finding harmless error where the ALJ excluded anxiety disorder and panic
disorder from his review at step two, but considered the claimant's anxiety and panic attacks at
subsequent steps); *cf. Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order)
(finding that an ALJ's determination that a claimant's depression was not severe at step two was
not harmless error where the ALJ completed the remaining three steps without taking the
claimant's mental restrictions into account when determining her residual functional capacity).
Nevertheless, the ALJ should address this inconsistency as part of a thorough review of the record
on remand.

[5] Light work involves lifting no more than 20 pounds at a time with frequent lifting
or carrying of objects weighing up to 10 pounds.  Even though the weight lifted
may be very little, a job is in this category when it requires a good deal of walking
or standing, or when it involves sitting most of the time with some pushing and
pulling of arm or leg controls.  To be considered capable of performing a full or
wide range of light work, you must have the ability to do substantially all of these
activities.  If someone can do light work, we determine that he or she can also do
sedentary work, unless there are additional limiting factors such as loss of fine
dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

**STANDARD OF REVIEW**

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (citations omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (internal quotation marks and brackets omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In determining whether the Commissioner's findings were based on substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* However, "it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013) (*per curiam*).

**DISCUSSION**

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and fails to apply the relevant legal standards. (Plaintiff's Motion for Judgment on the Pleadings ("Pl.'s Mot."), Dkt. 13-1, at 5.) For the reasons set forth below, the Court grants Plaintiff's motion and remands to the SSA because the ALJ failed to adequately develop the record and provided an RFC that was not supported by substantial evidence. *See Fontanez v. Colvin*, No. 16-CV-1300 (PKC), 2017 WL 4334127, at *13–27 (E.D.N.Y. Sept. 28, 2017) (remanding after court determined that

7

the record had not been fully developed and that the RFC was not supported by substantial evidence).

## I.     Failure to Develop the Record

"The ALJ's failure to develop the record is a threshold issue, because the Court cannot rule on whether the ALJ's decision regarding [Plaintiff's] functional capacity was supported by substantial evidence if the determination was based on an incomplete record." *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 267 (S.D.N.Y. 2016) (internal quotation marks omitted); *accord Alvarez v. Comm'r of Soc. Sec.*, No. 14-CV-3542 (MKB), 2015 WL 5657389, at *14 (E.D.N.Y. Sept. 23, 2015).   It is well-established in the Second Circuit that an ALJ presiding over a social security hearing must "affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009)).   This obligation exists "even where, as here, the claimant is represented by counsel." *Merriman v. Comm'r of Soc. Sec.*, No. 14-CV-3510 (PGG) (HBP), 2015 WL 5472934, at *18 (S.D.N.Y. Sept. 17, 2015) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)).   Furthermore, even though Plaintiff did not raise the issue, "the Court must independently consider whether the ALJ failed to satisfy his duty to develop the record." *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *10 (S.D.N.Y. Aug. 6, 2021) (collecting cases).

Here, there are several portions of the ALJ's decision that suggest ambiguity and a further need to develop the limited 587-page record.   First, the ALJ failed to obtain sufficient medical evidence of Plaintiff's mental health treatment, which included six years of psychotherapy with Dr. Caccavale and bi-weekly therapy sessions with another mental health professional.[6]   Second,

---

[6] As discussed below, the identity of that other professional and their specialty or credentials is unclear from the record.   However, it appears that Plaintiff may have met bi-weekly

the ALJ failed to develop the record as to marked inconsistencies between the medical opinion and treatment notes of Dr. Tsukerman, who treated Plaintiff for Bell's palsy and knee and back pain after her stroke, and instead chose to find the opinion unpersuasive.

### A.   Failure to Develop the Record on Plaintiff's Mental Impairments

An ALJ has "regulatory obligations to develop a complete medical record before making a disability determination." *Pratts*, 94 F.3d at 37; *see* 20 C.F.R. § 416.912(b)(1).  As part of that obligation, an ALJ must attempt to obtain medical evidence—including medical opinions and treatment records—from a claimant's treating physicians. *Prieto*, 2021 WL 3475625, at *10–11. To fulfill that obligation, an ALJ must make an initial request for medical evidence and, if no evidence is received, make a follow-up request between 10 and 20 days after the initial request. *Id.* at *10; 20 C.F.R § 404.1512(b)(1)(i).  That obligation continues to exist even in cases involving claims, such as this one, filed after March 27, 2017, to which the "treating physician rule" does not apply.  *See Prieto*, 2021 WL 3475625, at *8, 10–11; *see also* 20 C.F.R. §§ 404.1527, 404.1520c; *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844, 5875 (Jan. 18, 2017).  Assembling a complete medical history before reaching an RFC is particularly important in the context of mental health, where a consultative examiner's one-time opinion "may not be indicative of her longitudinal mental health." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019).

Here, the record contains a mere 21 pages of medical evidence about Plaintiff's mental impairments despite at least six years of consistent mental health treatment.  (Tr. 58–65, 481–84, 518–26.)   The evidence includes medical opinions from Dr. Caccavale, Plaintiff's treating

---

for six years with Martha Cantaue and that Cantaue holds either an M.D. or Ph.D.  (*See infra* note 7.)

psychologist, Dr. Kim, a consultative examiner, and Dr. Fassler, a non-examining expert, and a single day of treatment notes from Dr. Caccavale.  There are at least three errors with respect to the ALJ's development of Plaintiff's mental health records that justify remand and should be corrected by the ALJ.  First, there is no evidence in the record that the ALJ attempted to obtain further treatment notes from Dr. Caccavale.  Second, the record does not contain any medical evidence from treating source Dr. Patricia Doyle.  And third, the record does not contain any medical evidence from Plaintiff's treating mental health therapist, who, as discussed below, appears to have been Martha Cantaue.

### 1.    Dr. Caccavale's Treatment Notes

The record indicates that Plaintiff started treating with Dr. Caccavale in October 2013 and began consistent monthly psychotherapy sessions in 2016.  (Tr. 481, 526.)  While the ALJ correctly obtained a medical opinion from Dr. Caccavale, the record contains only a single day of treatment notes.  (Tr. 518–21.)  Courts have held that an ALJ's obligation to assemble a claimant's medical history includes obtaining medical opinions and treatment records from Plaintiff's treating sources. *Antonetti v. Comm'r of Soc. Sec. Admin.*, 19-CV-1396 (KAM), 2020 WL 3893010, at *5–8 (E.D.N.Y. Jul. 11, 2020) (remanding because failure to obtain treatment records called the ALJ's assessment of a treating physician's opinion into question); *Craig*, 218 F. Supp. 3d at 268 ("The absence of any treatment records from [the claimant's treating psychiatrist], with no documented attempts by the ALJ to obtain them, is such a clear violation of the ALJ's duty to develop the record that it is not unheard of in such cases for the Commissioner to affirmatively move to remand the case on that basis."); *Rodriguez v. Comm'r of Soc. Sec.*, No. 19-CV-6855 (VSB) (JLC), 2020 WL 3968267, at *18 (S.D.N.Y. July 14, 2020) ("Having failed to obtain any additional mental health treatment notes . . . , the ALJ thus relied on an incomplete medical record.  Such reliance is an error warranting remand."); *Clark v. Comm'r of Soc. Sec.*, No. 15-CV-8406 (PKC) (SN), 2017

WL 1162204, at *3–4 (S.D.N.Y. Mar. 27, 2017) ("In addition, because Clark is alleging a disability based on a psychiatric impairment, [the therapist's] treatment notes are particularly important to the evaluation of his functional capacity . . . .  This information is critical to a full evaluation of Clark's functional capacity.").

While failing to obtain these records is a sufficient ground for remand, the ALJ further erred by discounting Dr. Caccavale's medical opinion because the treatment records were absent. In determining that Dr. Caccavale's opinion was not persuasive, the ALJ found that it was "not supported by the evidence in the file, as [Dr. Caccavale's] progress notes are not included in the file to fully assess his opinion."  (Tr. 18.)  ALJs may not discount a medical opinion based on their own failure to develop the record.  *Gardner v. Colvin*, No. 16-CV-2385 (JFB), 2019 WL 3753797, at *17 (E.D.N.Y. Aug. 8, 2019) (Bianco, Circuit J., sitting by designation) ("The lack of psychotherapy notes also implicates the ALJ's decision to give [the licensed master social worker's] findings little weight.  Therefore, the ALJ should have sought and reviewed these notes . . . ." (footnote omitted)); *Jermyn v. Colvin*, No. 13-CV-5093 (MKB), 2015 WL 1298997, at *20 (E.D.N.Y. Mar. 23, 2015) ("Instead of developing the record, the ALJ reached his RFC conclusion based, in part, on the absence of this information in the record[;] . . . the ALJ was not permitted to construe the silence in the record . . . as indicating support for his determination as to [P]laintiff's limitations.").

The Commissioner counters that the ALJ had no further duty to develop the record because Plaintiff was represented by counsel.  (Defendant's Cross-Motion for Judgment on the Pleadings ("Def.'s Mem."), Dkt. 16-1, at 16.)  For that proposition, the Commissioner cites a case where a court found that the ALJ did not have a duty to obtain treatment notes because of a circumstance not present here—*i.e.*, Plaintiff had begun treatment shortly before the ALJ hearing—and also

11

acknowledged that a plaintiff being represented does not absolve an ALJ from developing the record. *Francis v. Comm'r of Soc. Sec.*, No. 20-CV-4619 (BMC), 2021 WL 3129873, at *3 (E.D.N.Y. July 23, 2021) ("I recognize that a claimant's representation by counsel before the ALJ does not absolve the ALJ of his obligation to develop the record.").

This Court therefore reiterates that regardless of whether a plaintiff is represented by counsel, an ALJ has a duty to develop the record when there are "obvious gaps." *Blash v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 642, 645 (2d Cir. 2020) ("When there is an obvious or clear gap in the record, the ALJ is required to seek out missing medical records, even when a party is represented by counsel." (internal quotation marks and brackets omitted)). The Court also rejects the Commissioner's argument that there was no "obvious gap" in the record in this case. (Def.'s Mem., Dkt. 16-1, at 16.) Courts have found that a failure to obtain psychiatric and therapy treatment notes constitutes an obvious gap that requires further development of the record. *Morales v. Berryhill*, No. 14-CV-2803 (KMK) (LMS), 2018 WL 679566, *16 (S.D.N.Y. Jan. 8, 2018) (failure to obtain treatment records, including biweekly therapy sessions and monthly medication management meetings, created obvious gap in the record), *report and recommendation adopted sub nom. Morales v. Comm'r of Soc. Sec.*, 2018 WL 679492 (S.D.N.Y. Feb. 1, 2018). Here, the lack of treatment notes from a psychotherapist who treated the claimant regularly over the course of six years is a clear and egregious example of a gap in the record.

The Commissioner also points to an exchange during the oral hearing where Plaintiff's counsel stated that the office of one of Plaintiff's treating sources indicated that they would not be sending over additional documentation. (Tr. 29.) From the record, it is unclear whether they are referring to the office where Plaintiff received treatment for her mental or physical impairments. Regardless, the statements by a plaintiff's counsel do not relieve the ALJs of their duty to develop

the record where there exist clear gaps in the record. *Weiss v. Comm'r of Soc. Sec.*, 19-CV-5916 (MKB), 2021 WL 2010503, at *15 n.8 (E.D.N.Y. Mar. 23, 2021) (finding that the ALJ's duty to develop the record exists even when a plaintiff's counsel states that the record is complete); *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 345 (E.D.N.Y. 2010) ("Without some reasonable explanation for the ALJ's failure to obtain . . . records, the court [will] not [be] satisfied that the ALJ fulfilled her affirmative obligation to develop the record."); *Lindo v. Saul*, No. 18-CV-1070, 2019 WL 4784921, at *21 (S.D.N.Y. Sept. 30, 2019) ("Plaintiff's counsel's erroneous representation at the second hearing that the record was complete did not discharge the ALJ of his duty, because the ALJ previously had relied upon a like misrepresentation that turned out to have been false; even after the second representation that the record was complete, more records were obtained; and there clearly were gaps in the record." (record citation and footnotes omitted)).

In sum, both the failure to obtain treatment records from Dr. Caccavale and impermissibly discounting his opinion for lack of treatment records are sufficient grounds for remand. *Antonetti*, 2020 WL 3893010, at 5–8; *Gardner*, 2019 WL 3753797, at *17.

### 2. Medical Evidence from Dr. Doyle and Plaintiff's Treating Mental Health Therapist

The record is sparse regarding Plaintiff's treatment with Dr. Doyle and Plaintiff's mental health therapist. The exhibits show that Plaintiff began psychotherapy treatment and medication management with Dr. Doyle around January 2016 and continued up until Plaintiff filed her claim on April 30, 2018. (Tr. 209.) Regarding Plaintiff's mental health therapist, it is clear that Plaintiff had bi-weekly therapy sessions since 2016; however, it is unclear with whom she worked. (Tr. 481.) Further review of the record suggests that these sessions were conducted by Martha Cantaue (Tr. 187), but it is unclear whether Martha Cantaue is an "acceptable medical source" under 20

C.F.R. § 404.1502(a)(7), given the lack of credentials indicated in the record.  However, there is

evidence to suggest that Martha Cantaue holds either an M.D. or PhD.[7]  (Tr. 29, 182, 187.)

The ambiguity and lack of reference to either of these sources, whom Plaintiff had seen for

at least two years and six years, respectively, requires further development of the record.  The

record does not reveal any attempt by the ALJ to obtain medical evidence from either Dr. Doyle

or Martha Cantaue, and this alone warrants remand.  *See Rosa v. Callahan*, 168 F.3d 72, 83 (2d

Cir. 1999) (remanding due to ALJ's failure to obtain "adequate information from [claimant's]

treating physician"); *Wilson v. Colvin*, 107 F. Supp. 3d 387, 404–08 (S.D.N.Y. 2015) (remanding

where there was an obvious gap in the record); *Oliveras ex rel. Gonzalez v. Astrue*, No. 07-CV-

2841, 2008 WL 2262618, at *6–7 (S.D.N.Y. May 30, 2008) (remanding so the ALJ could make

all reasonable efforts to obtain treating physician's opinion).

### B.   Failure to Develop Potential Inconsistencies Between Dr. Tsukerman's Treatment Notes and Opinion

While there is no affirmative duty to re-contact a treating physician if there are

inconsistencies within a medical opinion, the ALJ has a duty to develop the record if there exists

"obvious gaps."  *Rusin v. Berryhill*, 726 Fed. App'x 837, 840–41 (2d Cir. 2018) ("[T]he ALJ was

under no obligation to recontact Dr. Letourneau where there were no obvious gaps in the

administrative record and the ALJ possessed Rusin's complete medical history."); *Micheli v.

Astrue*, 501 Fed. App'x 26, 29–30 (2d Cir. 2012); *Rosa*, 168 F.3d at 79–80, 82–83.  While obvious

gaps in the record can include missing medical evidence, as discussed above, inconsistencies or

---

[7] An exchange between the ALJ and Plaintiff's counsel at the hearing, references three doctors, all spelled phonetically: "Dr. Tuskerman, Dr. Catavallo, [and] Dr. Catavey."  (Tr. 29.) While it is unclear whether "Dr. Catavey" is referring to Martha Cantaue, other filings show a "Martha G Dr" who has the same address listed as Plaintiff's "therapist."  (Tr. 182, 187.)  While the decision to remand is not based on these credentials, the above-mentioned evidence suggests that Martha Cantaue qualifies as an acceptable medical source under 20 C.F.R. § 404.1502(a)(7).

vague opinions can also create a duty to further develop the record. *Madera v. Comm'r of Soc. Sec.*, 20-CV-1459 (PKC), 2021 WL 4480656, *6–8, 10 (E.D.N.Y. Sept. 30, 2021) (remanding because of the ALJ's determination that a consultative examiner's opinion was "vague"); *Lee v. Saul*, No. 19-CV-9451 (CS) (JCM), 2020 WL 5362619, at *14 (S.D.N.Y. Sept. 8, 2020) (adopting report and recommendation) ("Although [the treating physician's] assessments setting forth [the plaintiff's] functioning levels were brief, and arguably vague, the appropriate solution was not to reject the opinions contained therein on that basis, but rather to recontact [the treating physician] in an effort to have him clarify any ambiguities." (record citation omitted)).

Here, the ALJ identified a significant difference between Dr. Tsukerman's medical opinion and his treatment notes.  (Tr. 18.)  In evaluating the persuasiveness of Dr. Tsukerman's opinion— the only opinion from a treating source on Plaintiff's physical impairments—the ALJ determined that the opinion was "unpersuasive" because it indicated that Plaintiff was "capable of significantly less than Sedentary work" while the treatment notes were "unremarkable."  (*Id.*)  That marked difference between the treating source's opinion and treatment notes is an obvious gap that should be developed on remand.  *Weiss*, 2021 WL 2010503, at *13 ("Accordingly, if some of [psychologist's] treatment notes and opinions were inconsistent, the ALJ should have developed the record and sought clarification in view of the perceived inconsistencies."); *Samaru v. Comm'r of Soc. Sec.*, No. 18-CV-06321 (KAM) (LB), 2020 WL 3051576, at *13 (E.D.N.Y. June 8, 2020) ("[G]iven the ALJ's finding that [the plaintiff's treating physician's] opinion was internally inconsistent with his treatment notes and/or inconsistent with other evidence in the record, the ALJ should have explained his finding and re-contacted [the treating physician] to further develop or reconcile the record."); *Romero v. Colvin*, No. 11-CV-3920 (ENV), 2016 WL 74820, at *4 (E.D.N.Y. Jan. 6, 2016) ("[T]o the extent that the ALJ perceived internal inconsistencies in [the

treating physician]'s opinion, he was obliged to recontact [the treating physician] and attempt to resolve them."); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("[E]ven if the [treating physician's] clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician]."); *cf. Micheli*, 501 Fed. App'x. at 29 (determining there was no duty to recontact given other treating physicians on the record supported the RFC).

## II.   The ALJ's Mental RFC Finding Is Not Supported by Substantial Evidence

While a failure to develop the record is sufficient to remand, the Court further finds that the ALJ's mental RFC finding is not supported by substantial evidence.   An ALJ's RFC determination must be supported by substantial evidence.   *Talavera*, 697 F.3d at 151.   "Substantial evidence is more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Selian*, 708 F.3d at 417 (quoting *Richardson*, 402 U.S. at 401 (internal quotation marks and brackets omitted)).   In determining whether the Commissioner's findings were based on substantial evidence, the Court must ascertain that the agency considered all evidence in reaching its findings.   20 C.F.R. § 404.1520(a)(3).

Insofar as Plaintiff's mental impairments were considered in the RFC determination (*see supra* note 4), the ALJ evaluated the opinions of Dr. Caccavale, Plaintiff's treating psychologist, Dr. Kim, a consultative examiner, and Dr. Fassler, a non-examining expert.   (Tr. 18.)   As discussed above, the ALJ found Dr. Caccavale's opinion to be unpersuasive and inconsistent with the record. (*Id.*)   Dr. Kim's opinion—finding that Plaintiff only had "mild" limitations (Tr. 483)—was considered "somewhat persuasive" because, although the ALJ found it to be consistent with the medical evidence, she acknowledged that Dr. Kim did not have a treating relationship with Plaintiff.   (Tr. 18–19.)   Dr. Fassler's opinion, based almost entirely on Dr. Kim's one-time examination, was also considered "somewhat persuasive" as the ALJ found it to be consistent with the record, but acknowledged that it was not more persuasive because Dr. Fassler never personally

examined Plaintiff. (*Id.*) While the ALJ acknowledged the shortcomings of the consultative examiner's and non-examining expert's opinions, the ALJ's RFC actually relied on Drs. Kim's and Fassler's opinions over Dr. Caccavale, finding Dr. Caccavale's opinion inconsistent with the limited, 21-page record that the ALJ developed on Plaintiff's mental impairments. (*Id.*) Therefore, despite the six years of consistent treatment with Dr. Caccavale, the ALJ conformed her findings on Plaintiff's mental impairments exclusively to a single-day examination performed by Dr. Kim. That was error.

The Second Circuit has "frequently cautioned" ALJs not to rely too heavily on consultative examiners, particularly in the context of mental illness where "a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella*, 925 F.3d at 98 (2d Cir. 2019). The ALJ's failure to acknowledge that, while discounting the opinion of the treating source and relying "heavily" on the opinion of a one-time consultative examiner who had no access to Plaintiff's relevant medical records, was error. *Rodriguez v. Kijakazi*, No. 20-CV-6829 (JLC), 2021 WL 5292751, at *15–16 (S.D.N.Y. Nov. 15, 2021); *Kenneth W. v. Comm'r of Soc. Sec.*, No. 19-CV-0825 (WBC), 2020 WL 7385251, at *3 (W.D.N.Y. Dec. 16, 2020) ("ALJs should not rely heavily on one-time consultative examiners, especially in the context of mental illness, as a single look at an individual's condition is not indicative of his overall mental health." (citing *Estrella*, 925 F.3d at 98)).

## CONCLUSION

For the reasons set forth herein, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Memorandum & Order. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

/s/ *Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 22, 2022
       Brooklyn, New York